## UNITED STATES  DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**ROBERT LEE McKEE**                    **CIVIL ACTION**

**versus**                             **NO. 10-344**

**N. BURL CAIN, WARDEN**               **SECTION: "I" (3)**

### REPORT AND RECOMMENDATION

This matter was referred to this United States Magistrate Judge for the purpose of conducting a hearing, including an evidentiary hearing, if necessary, and submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts.  Upon review of the record, the Court has determined that this matter can be disposed of without an evidentiary hearing.  See 28 U.S.C. § 2254(e)(2).  Therefore, for all of the following reasons, **IT IS RECOMMENDED** that the petition be **DISMISSED WITH PREJUDICE**.

Petitioner, Robert Lee McKee, is a state prisoner incarcerated at the Louisiana State Penitentiary, Angola, Louisiana.  On February 18, 2005, he was convicted of aggravated battery, attempted manslaughter, attempted second degree kidnapping, armed robbery, disarming a peace

officer, and aggravated escape.[1]  On February 23, 2005, he was sentenced to the following terms of imprisonment:  seven years on the aggravated battery conviction; twenty-five years without benefit of probation, parole, or suspension of sentence on the attempted manslaughter conviction; twenty years without benefit of probation, parole, or suspension of sentence on the attempted second degree kidnapping conviction; fifty-five years without benefit of probation, parole, or suspension of sentence on the armed robbery conviction; five years on the conviction for disarming a peace officer; and ten years on the aggravated escape conviction.  It was ordered that the first five of those sentences run concurrently and that the sixth sentence run consecutively.[2]  On June 9, 2006, the Louisiana First Circuit Court of Appeal affirmed those convictions and sentences.[3]  The Louisiana Supreme Court then denied petitioner's related writ application on March 16, 2007.[4]

On April 8, 2008, petitioner filed with the state district court an application for post-conviction relief.[5]  That application was denied on September 24, 2008.[6]  Petitioner's related writ

---

[1] State Rec., Vol. VII of VIII, transcript of February 18, 2005, pp. 176-77; State Rec., Vol. I of VIII, minute entry dated February 18, 2005; State Rec., Vol. II of VIII, jury verdict forms.

[2] State Rec., Vol. VII of VIII, transcript of February 23, 2005; State Rec., Vol. I of VIII, minute entry dated February 23, 2005.

[3] State v. McKee, No. 2005 KA 2515 (La. App. 1st Cir. June 9, 2006) (unpublished); Supplemental State Rec., Vol. I of I.

[4] State v. McKee, 952 So.2d 695 (La. 2007) (No. 2006-KO-1920); Supplemental State Rec., Vol. I of I.

[5] Supplemental State Rec., Vol. I of I.

[6] Supplemental State Rec., Vol. I of I, Order dated September 24, 2008.

applications were then likewise denied by the Louisiana First Circuit Court of Appeal on February 2, 2009,[7] and by the Louisiana Supreme Court on January 8, 2010.[8]

On February 1, 2010, petitioner filed the instant federal application for *habeas corpus* relief.[9]  In support of his application, he asserts the following claims:

  1.   The trial court wrongly denied petitioner's motion to suppress his confession and wrongly admitted that confession into evidence;

  2.   Petitioner received ineffective assistance of counsel; and

  3.   Petitioner was denied his right to a speedy trial.

Petitioner has also filed a supplemental memorandum in support of his claims.[10]

The state concedes that petitioner's federal application is timely filed and that his claims are exhausted.[11]

<u>Standard of Review</u>

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") comprehensively overhauled federal *habeas corpus* legislation, including 28 U.S.C. § 2254.

---

[7] <u>State v. McKee</u>, No. 2008 KW 2255 (La. App. 1st Cir. Feb. 2, 2009); Supplemental State Rec., Vol. I of I.

[8] <u>State *ex rel.* McKee v. State</u>, 24 So.3d 865 (La. 2010) (No. 2009-KH-0656); Supplemental State Rec., Vol. I of I.

[9] Rec. Doc. 1.

[10] Rec. Doc. 15.

[11] Rec. Doc. 11, p. 4.

Amended subsections 2254(d)(1) and (2) contain revised standards of review for questions of law, questions of fact, and mixed questions of law and fact.  The amendments "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law."  Bell v. Cone, 535 U.S. 685, 693 (2002).  Provided that the state court adjudicated the claim on the merits, pure questions of law and mixed questions of law and fact are reviewed under § 2254(d)(1) and pure questions of fact are reviewed under § 2254(d)(2).  Hill v. Johnson, 210 F.3d 481, 485 (5th Cir. 2000).

As to questions of law and mixed questions of law and fact, a federal court must defer to the state court's decision unless it "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1).  Courts have held that the "'contrary to' and 'unreasonable application' clauses [of § 2254(d)(1)] have independent meaning."  Bell, 535 U.S. at 694.

Regarding the "contrary to" clause, the United States Fifth Circuit Court of Appeals has explained:

> A state court decision is contrary to clearly established precedent if the state court applies a rule that contradicts the governing law set forth in the [United States] Supreme Court's cases.  A state-court decision will also be contrary to clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of the [United States] Supreme Court and nevertheless arrives at a result different from [United States] Supreme Court precedent.

Wooten v. Thaler, 598 F.3d 215, 218 (5th Cir. 2010) (internal quotation marks, ellipses, brackets, and footnotes omitted).

Regarding the "unreasonable application" clause, the United States Supreme Court has explained:

> [A] state-court decision can involve an "unreasonable application" of this Court's clearly established precedent in two ways.  First, a state-court decision involves an unreasonable application of this Court's precedent if the state court identifies the correct governing legal rule from this Courts cases but unreasonably applies it to the facts of the particular state prisoner's case.  Second, a state-court decision also involves an unreasonable application of this Court's precedent if the state court either unreasonably extends a legal principle from our precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.

Williams v. Taylor, 529 U.S. 362, 407 (2000).  The Supreme Court has noted that the focus of this inquiry "is on whether the state court's application of clearly established federal law is objectively unreasonable, and we stressed in Williams that an unreasonable application is different from an incorrect one."   Bell, 535 U.S. at 694.

As to questions of fact, factual findings are presumed to be correct and a federal court will give deference to the state court's decision unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."   28 U.S.C. § 2254(d)(2); see also 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.").

<u>Facts</u>

On direct appeal, the Louisiana First Circuit Court of Appeal summarized the facts

of this case as follows:

> On December 29, 2001, defendant was an inmate at the Washington Parish Jail. Early that day, defendant complained that he was not feeling well and his stomach hurt. Deputy Howard E. Sanderson, of the Washington Parish Sheriff's Office, eventually took defendant to Bogalusa Charity Hospital. Several hours passed between the time defendant was initially triaged by a nurse and the time he was treated by a doctor.
>
> According to Deputy Sanderson, he took defendant to the restroom in the hospital lobby before they returned to jail after a doctor saw defendant. Deputy Sanderson released defendant's hands from the detention belt around his waist so he could use the restroom. Deputy Sanderson waited outside of the restroom for a few minutes before he checked on defendant. Deputy Sanderson went into the restroom and found defendant pulling up his pants. Deputy Sanderson told defendant that he would also use the restroom while defendant got dressed.
>
> Without warning, defendant struck Deputy Sanderson with a metal object, otherwise known as a "shank," that defendant had smuggled from the jail. Defendant struck Deputy Sanderson several times in the head, causing wounds that would take twenty-eight stitches to close. Defendant, who was 6'3" and weighed about 220 pounds, quickly overpowered Deputy Sanderson, who was 5'4" and weighed 142 pounds.
>
> Hospital employees could hear a struggle taking place in the restroom. Ron Ballay, the registered nurse who had assisted in treating defendant in the emergency room, was summoned to the lobby restroom after receiving a call that something was happening. Ballay had to forcefully push the door of the restroom just to get it open about eight inches. He saw blood everywhere. He saw the deputy with blood on his face pushed against the wall. Deputy Sanderson instructed Ballay that defendant was trying to escape and that he should get help.
>
> Defendant was able to get Deputy Sanderson's service weapon and moments later, he exited the restroom and left the hospital using the front entrance. While in the restroom, defendant

– 6 –

had shed his orange prison clothing and was wearing a t-shirt and pants.

At that same time, Officer Stacey Economu of the Bogalusa Police Department had stopped to drop off a Christmas gift to a friend at the L & C Lounge directly across the street from the hospital.  Officer Economu had not yet reported for her shift, but she was wearing her police uniform and was in her personal vehicle, a Ford van.  Officer Economu heard the radio dispatch regarding a fight between a prisoner and a deputy at the Charity Hospital and got into her van to drive across the street.

Before she could move her van, Officer Economu observed a black man running towards her.  Not realizing that this man was the defendant who had just escaped from custody, Officer Economu got out of her van and expected the man to inform her of what happened at the hospital.  Ignoring her order to stop running, defendant kept running straight towards Office Economu and pointed the weapon directly at her head.  Defendant then grabbed Officer Economu from behind, pointed the gun at her head and began grabbing for her service weapon.

Officer Economu struggled to keep defendant from taking her weapon.  During this struggle, Sergeant Tommie Sorrell and Officer Mike Garic, both of the Bogulasa Police Department, arrived on the scene in their separate units.  Sergeant Sorrell observed defendant tying to force Officer Economu into her van.  Defendant was able to take Officer Economu's weapon from her.  According to Officer Economu, when she felt the weapon come loose, she rolled away from defendant and heard two to three gunshots.

Sergeant Sorrell testified that she had exited her unit and was armed with a shotgun.  When Officer Economu got away from defendant, defendant jumped into Officer Economu's van and began driving straight at Sergeant Sorrell.  Sergeant Sorrell fired her shotgun at the windshield of the van, but defendant ducked and sharply steered the van away from Sergeant Sorrell's unit.

Sergeant Sorrell then told Officer Economu to get into the back of her unit and they joined in the pursuit of defendant.  At least four police units pursued defendant eastbound on Louisiana Avenue, Highway 10 through Bogalusa.  During the chase, defendant forced several cars off the road and drove very erratically as he tried to evade the police.  Eventually, defendant drove into Mississippi, where he ran off the roadway into a ditch.  The police observed defendant get out of the vehicle and run towards the roadway where he approached another vehicle and began beating on the roof of the

vehicle.  The police apprehended defendant.  The Pearl River County Police in Mississippi took defendant into custody.

Defendant testified at trial.  He claimed that since his incarceration in the Washington Parish Jail on June 25, 2001, he had been denied proper medication for his high blood pressure condition and depression.  Defendant further testified that he was in fear for his life because of beatings by other inmates.  Defendant testified that he was only trying to escape what he viewed as wrongful treatment in the Washington Parish Jail by escaping and returning to Mississippi.[12]

Confession

Petitioner first claims that the trial court erroneously denied his motion to suppress his confession and wrongly admitted that confession into evidence.  It is unclear to what confession petitioner is referring.  There are, however, two possibilities.

First, the record reflects that Detectives Tom Anderson and Denver Penton interviewed petitioner at the Stone County Jail in Mississippi in December of 2001.  The detectives thought that the interview was being videotaped by the jail's equipment; however, the interview was not properly recorded and no usable videotape of the interview exists.  A hearing was held on February 15, 2005, concerning whether petitioner's statements during that interview, as they were memorialized in Anderson's notes, should be suppressed.  At that hearing, defense counsel's motion to suppress was denied.[13]  However, the state ultimately elected not to introduce the statements at trial.

---

[12] State v. McKee, No. 2005 KA 2515, pp. 3-5 (La. App. 1st Cir. June 9, 2006) (unpublished); Supplemental State Rec., Vol. I of I.

[13] Rec. Doc. III of VIII, transcript of February 15, 2005, pp. 6-18.

– 8 –

Second, also in December of 2001, petitioner sent Major Gardner, a Mississippi corrections official, a letter and signed statement in which petitioner stated in pertinent part:

> I, Robert Lee McKee, having fully understood my rights and hereby waive them do swear that the statement I am about to make is the truth. On or about the 30th day of December I Robert Lee McKee did willfully, unlawfully and feloneously attempt to carjack a vehicle in Pearl River County, Mississippi. I also willingly, unlawfully and feloneously fired three shots from a stolen handgun at a white truck I had chose as my first avenue of escape from the pursuing officers were on their way. Out of frustration and on the run I fired my weapon at what I thought was my last hope escaping, I mean last hope going, but I stopped when I saw new hope approaching. I did point my previous fired pistol at the driver of the second vehicle and ordered them to unlock the door and surrender the vehicle, but when he wouldn't I couldn't find it in my heart to harm him so I surrendered my weapon at the Bogalusa Department – to the Bogalusa Police Officer who made the arrest in Mississippi. I, Robert L. McKee, do swear that this statement is the truth and no threats or promises of coercion of any kind was made to me. This statement is voluntarily.[14]

When confronted with the documents during cross-examination, petitioner admitted that he wrote them of his own free will.[15] However, he stated that the confession was untrue, explaining that it was a ruse he concocted in an attempt to have himself prosecuted and convicted in Mississippi as a way to avoid being returned to Louisiana.[16] He testified: "I was willing to do anything I had to do to plead guilty in Mississippi on any charges that I could to keep from coming back to the same situation."[17]

---

[14] State Rec., Vol. VI of VIII, transcript of February 18, 2005, pp. 86-87.

[15] State Rec., Vol. VI of VIII, transcript of February 18, 2005, p. 86.

[16] State Rec., Vol. VI of VIII, transcript of February 18, 2005, pp. 87-88.

[17] State Rec., Vol. VI of VIII, transcript of February 18, 2005, p. 88.

Regardless of whether petitioner's claim is based on the oral statement he gave to Detectives Tom Anderson and Denver Penton or the written confession he gave to Major Gardner, the claim does not warrant relief for the following reasons.

To the extent that the claim is based on the oral statement given to Anderson and Penton, the claim clearly has no merit because that statement was never introduced at trial.  See Chavez v. Martinez, 538 U.S. 760, 767 (2003) (plurality opinion) ("Statements compelled by police interrogations of course may not be used against a defendant at trial, but it is not until their use in a criminal case that a violation of the Self-Incrimination Clause occurs. ... Martinez was never made to be a 'witness' against himself in violation of the Fifth Amendment's Self-Incrimination  Clause because his statements were never admitted as testimony against him in a criminal case." (citation omitted)); United States v. Karoly, Crim. Action No. 08-592, 2009 WL 2004657, at *3 (E.D. Pa. July 1, 2009).

To the extent that petitioner's claim is based on the documents he sent to Major Gardner, the claim fares no better.  Petitioner alleges that his written confession was "unlawfully obtained, it was not given freely or voluntarily, and it was given without Miranda warnings and without advice from an [a]ttorney with regards to the rights of the accused."[18]  Petitioner presents no evidence, other than his own bald allegations, in support of these contentions.  Moreover, the evidence of record is clearly to the contrary.  As noted, petitioner expressly noted in his statement that (1) he understood and waived his rights, (2) there were no threats, promises, or coercion in connection with the statement, and (3) the statement was voluntary.  Moreover, as also noted, he

---

[18] Rec. Doc. 1, p. 5.

testified under oath at trial that his statement was voluntarily made as part of a plan he concocted on his own in an attempt to avoid return to Louisiana.  In summary, there is simply no colorable evidence that the confession contained in the materials sent to Gardner was in any way compelled or even solicited by law enforcement officials.  Therefore, petitioner's right against self-incrimination was not implicated and could not serve as a basis for excluding the documents from admission into evidence.  See Stroud v. United States, 251 U.S. 15, 21-22 (1919); Bridges v. Cason, 198 Fed App'x 491, 495-96 (6th Cir. 2006); United States v. Tyler, 281 F.3d 84, 94-96 (3rd Cir. 2002); see also United States v. Morado, 454 F.2d 167, 173 (5th Cir. 1972) ("Some element of official compulsion remains the *sine qua non* of a successful invocation of the right to Miranda's protection.").

Ineffective Assistance of Counsel

Petitioner also claims that he received ineffective assistance of counsel.  In the post-conviction proceedings, the state district court rejected that claim, holding:

> Under Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), defendant must show that his counsel's performance was deficient, and that the deficiency was such that it deprived the defendant of a fair trial.  The claims asserted by McKee are that his counsel failed to investigate the case, interview witnesses, and call witnesses to testify.  He also claims that he was coerced by his counsel to testify, and failed to object to remarks made by the prosecutor regarding the Mississippi crime.  A review of the record does not support any of these allegations.  No further proof is offered, nor any facts to make a showing that his appeal would in any way be successful.  Petitioner has not met his burden of proof, and thus all remaining claims are dismissed.[19]

---

[19] Supplemental State Rec., Vol. I of I, Order dated September 24, 2008, p. 2.

Without assigning additional reasons, the Louisiana First Circuit Court of Appeal and the Louisiana Supreme Court then likewise denied petitioner's claims.[20]

Because a claim of ineffective assistance of counsel is a mixed question of law and fact, this Court must defer to the state court decision rejecting petitioner's claims unless that decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1); Moore v. Cockrell, 313 F.3d 880, 881 (5th Cir. 2002). For the following reasons, the Court finds that neither of those conditions is met in the instant case.

As correctly noted by the state court, the United States Supreme Court established a two-prong test for evaluating claims of ineffective assistance of counsel. A petitioner seeking relief must demonstrate that counsel's performance was deficient *and* that the deficient performance prejudiced his defense. Strickland v. Washington, 466 U.S. 668, 697 (1984). A petitioner bears the burden of proof on such a claim and "must demonstrate, by a preponderance of the evidence, that his counsel was ineffective." Jernigan v. Collins, 980 F.2d 292, 296 (5th Cir. 1993); see also Clark v. Johnson, 227 F.3d 273, 284 (5th Cir. 2000). If a court finds that a petitioner has made an insufficient showing as to either of the two prongs of inquiry, i.e. deficient performance or actual prejudice, it may dispose of the ineffective assistance claim without addressing the other prong. Strickland, 466 U.S. at 697.

---

[20] State v. McKee, No. 2008 KW 2255 (La. App. 1st Cir. Feb. 2, 2009); State *ex rel.* McKee v. State, 24 So.3d 865 (La. 2010) (No. 2009-KH-0656); Supplemental State Rec., Vol. I of I.

To prevail on the deficiency prong of the Strickland test, a petitioner must demonstrate that counsel's conduct fails to meet the constitutional minimum guaranteed by the Sixth Amendment.  See Styron v. Johnson, 262 F.3d 438, 450 (5th Cir. 2001).  "Counsel's performance is deficient if it falls below an objective standard of reasonableness."  Little v. Johnson, 162 F.3d 855, 860 (5th Cir. 1998).  Analysis of counsel's performance must take into account the reasonableness of counsel's actions in light of all the circumstances.  See Strickland, 466 U.S. at 689.  "[I]t is necessary to 'judge ... counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.'"  Lockhart v. Fretwell, 506 U.S. 364, 371 (1993) (quoting Strickland, 466 U.S. at 690).  A petitioner must overcome a strong presumption that the conduct of his counsel falls within a wide range of reasonable representation.  See Crockett v. McCotter, 796 F.2d 787, 791 (5th Cir. 1986); Mattheson v. King, 751 F.2d 1432, 1441 (5th Cir. 1985).

In order to prove prejudice with respect to trial counsel, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Strickland, 466 U.S. at 694.  In this context, a reasonable probability is "a probability sufficient to undermine confidence in the outcome."  Id.  In making a determination as to whether prejudice occurred, courts must review the record to determine "the relative role that the alleged trial errors played in the total context of [the] trial."  Crockett, 796 F.2d at 793.

In the instant case, petitioner first contends that his counsel was ineffective for failing to adequately investigate the case.  However, a petitioner must have factual support for such a claim

– 13 –

and point to evidence in the record demonstrating that further investigation would in fact have revealed additional information beneficial to the defense.  See Moawad v. Johnson, 143 F.3d 942, 948 (5th Cir. 1998); see also Brown v. Dretke, 419 F.3d 365, 375 (5th Cir. 2005); Wilson v. Cain, Civ. Action No. 06-890, 2009 WL 2163124, at *22 (E.D. La. July 16, 2009); Davis v. Cain, Civ. Action No. 07-6389, 2008 WL 5191912, at *10 (E.D. La. Dec. 11, 2008).  Here, petitioner points to no such beneficial information evidence that would have been revealed through further investigation.  Accordingly, he has not demonstrated that he was prejudiced by the allegedly inadequate investigation, and his claim therefore fails.  See Thomas v. Cain, Civ. Action No. 09-4425, 2009 WL 4799203, at *9 (E.D. La. Dec. 9, 2009).

       It is next argued that counsel was ineffective for failing to call witnesses to testify on petitioner's behalf.  However, it is clear that "complaints of uncalled witnesses are not favored in federal habeas corpus review because allegations of what the witness would have testified are largely speculative."  Evans v. Cockrell, 285 F.3d 370, 377 (5th Cir. 2002).  Therefore, to show the prejudice required to support an ineffective assistance claim premised on the failure to call a witness, a petitioner must produce evidence showing that the witness was available and would in fact have testified at trial in a manner beneficial to the defense.  See id. (a petitioner must bring forth evidence, such as affidavits from the uncalled witness, in support of his claim); see also Bray v. Quarterman, 265 Fed. App'x 296, 298 (5th Cir. 2008); Anthony v. Cain, Civ. Action No. 07-3223, 2009 WL 3564827, at *8 (E.D. La. Oct. 29, 2009) ("This Court may not speculate as to how such witnesses would have testified; rather, a petitioner must come forward with evidence, such as affidavits from the uncalled witnesses, on that issue."); Combs v. United States, Nos. 3:08-CV-0032 and 3:03-CR-

0188, 2009 WL 2151844, at *10 (N.D. Tex. July 10, 2009) ("Unless the movant provides the court with affidavits, or similar matter, from the alleged favorable witnesses suggesting what they would have testified to, claims of ineffective assistance of counsel fail for lack of prejudice."); Harris v. Director, TDCJ-CID, No. 6:06cv490, 2009 WL 1421171, at *7 (E.D. Tex. May 20, 2009) ("Failure to produce an affidavit (or similar evidentiary support) from the uncalled witness is fatal to the claim of ineffective assistance."); Daigle v. Travis, Civ. Action No. 07-9425, 2008 WL 3562458, at *10 (E.D. La. Aug. 12, 2008).  Here, petitioner has not presented any evidence whatsoever to establish that the potential witnesses were available and would have been willing to testify at trial in a manner beneficial to the defense.  Accordingly, he has not met his burden of proof with respect to his claim, and the claim necessarily fails.

Petitioner next contends that he was compelled to testify by defense counsel.  As noted, petitioner bears the burden of proof in this proceeding, and, again, he has brought forth no evidence whatsoever in support of his contention.   Moreover, in his state post-conviction application, petitioner clearly stated that his counsel merely advised him to testify:

> Attorney Hogue said that the Jury needed to hear my version of what happened, and that he would protect me as best he could.  An[d] although petitioner seriously doubted the truth of this statement, his decision to follow the advise [sic] of Mr. Hogue was based on the testimony or lack thereof, by earlier witnesses.[21]

Accordingly, petitioner has not shown that he was compelled to testify by counsel.[22]

---

[21] Supplemental State Rec., Vol. I of I, post-conviction application, p. 22.

[22] Moreover, even if petitioner's claim were broadly construed as a claim that his counsel erred in advising him to testify, the claim would still fail.  The decision of whether to advise a criminal client to testify "is frequently one of the most difficult and vexatious decisions a trial attorney must

Petitioner also contends that counsel was ineffective for failing to adequately investigate and challenge his confession.  Again, it is not clear whether he is referring to the oral statement he gave to Detectives Tom Anderson and Denver Penton or to the documents he sent unsolicited to Major Gardner.  However, the claim fails in either event.  As noted, the statement given to Anderson and Penton was not introduced at trial; therefore, petitioner suffered no prejudice from his counsel's actions or inactions with respect to that statement.  To the extent that petitioner's claim is based on the documents he sent to Gardner, the confession contained therein did not violate petitioner's right against self-incrimination for the reasons previously explained.  Accordingly, that confession was admissible and, therefore, counsel did not perform deficiently and petitioner suffered no prejudice.

---

make" and "[t]he examination of that decision with the visual acuity inherent in hindsight is grossly inappropriate."  Winfrey v. Maggio, 664 F.2d 550, 552 (5th Cir. 1981); see also United States v. Garcia, 762 F.2d 1222, 1226 (5th Cir. 1985) ("[T]he decision whether to put a Defendant on the stand is a 'judgment call' which should not easily be condemned with the benefit of hindsight."). Further, such a matter is inherently one of trial strategy, and federal *habeas* courts are not to lightly second-guess counsel's decisions on matters of trial tactics; rather, courts are to employ a strong presumption that counsel's conduct falls within a wide range of reasonable assistance and, under the circumstances, might be considered sound trial strategy.  Strickland, 466 U.S. at 689; United States v. Mullins, 315 F.3d 449, 453 (5th Cir. 2002); Coker v. Thaler, 670 F.Supp.2d 541, 553 (N.D. Tex. 2009) ("The decision whether to advise a defendant to testify is a tactical choice of trial strategy that is usually not subject to review under Strickland."); see also St. Aubin v. Quarterman, 470 F.3d 1096, 1102 (5th Cir. 2006) ("Strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable. Moreover, a conscious and informed decision on trial tactics and strategy cannot be the basis of constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness."). In the instant case, the decision to advise petitioner to testify was not so manifestly wrong as to overcome that presumption.

In his supplemental memorandum,[23] petitioner argues that his counsel should have moved for a mistrial when the confession to Gardner was admitted into evidence because that confession referred to other crimes committed in Mississippi.  However, on direct appeal, the Louisiana First Circuit Court of Appeal held that the evidence regarding the Mississippi crimes was properly admitted at trial:

> [Defendant] claims he was prejudiced by the State's use of other crimes evidence.  The other crimes evidence at issue is the attempted carjacking of a vehicle in Mississippi just prior to defendant's apprehension by the pursuing Bogalusa police.
>
> Generally, courts may not admit evidence of other crimes to show defendant is a man of bad character who has acted in conformity with his bad character.  However, under La. Code Evid. art. 404(B)(1) evidence of other crimes, wrongs, or acts may be introduced when it relates to conduct, formerly referred to as *res gestae*, that "constitutes an integral part of the act or transaction that is the subject of the present proceeding."  *Res gestae* events constituting other crimes are deemed admissible because they are so nearly connected to the charged offense that the State could not accurately present its case without reference to them.  A close proximity in time and location is required between the charged offense and the other crimes evidence to insure that the purpose served by admission of other crimes evidence is not to depict the defendant as a bad man, but rather to complete the story of the crime on trial by proving its immediate context of happenings near in time and place.  **State v. Taylor**, 01-1638, p. 10 (La. 1/14/03), 838 So.2d 729, 741, cert. denied, 540 U.S. 1103, 124 S.Ct. 1036, 157 L.Ed.2d 886 (2004).
>
> Integral act (*res gestae*) evidence incorporates a rule of narrative completeness without which the State's case would lose its narrative momentum and cohesiveness, with power not only to support conclusions but to sustain the willingness of jurors to draw the inferences, whatever they may be, necessary to reach an honest verdict.  **State v. Traylor**, 01-1638 at p. 11, 838 So.2d at 741-42.

---

[23] Rec. Doc. 15.

> In the present case, the entire chain of events leading to each of the charged crimes was defendant's escape from custody and what actions he took to facilitate that escape.  Without including the attempted carjacking that occurred in Mississippi, the State's case would lose its narrative momentum because Bogalusa police officers were the ones to ultimately apprehend defendant as a result of their pursuit.  Clearly, the attempted carjacking committed by defendant as he attempted to elude capture by Bogalusa police was an admissible other crime as part of the *res gestae*.  Moreover, the relationship between the six counts defendant was charged with and the attempted carjacking in Mississippi is of such close connection in time and location, we cannot say defendant was unfairly surprised by lack of notice.  See **State v. Brewington**, 601 So.2d 656, 657 (La. 1992) (*per curiam*).[24]

The Louisiana Supreme Court then likewise denied petitioner's related writ application without assigning additional reasons.[25]

For the foregoing reasons, it is evident that evidence regarding the Mississippi crimes was properly admitted.  Therefore, any motion for a mistrial based on the fact that the confession referenced those crimes would have been meritless.  Accordingly, petitioner cannot show that counsel was deficient for failing to file such a motion or that any prejudice resulted.  See, e.g., United States v. Gibson, 55 F.3d 173, 179 (5th Cir. 1995) ("Counsel is not required by the Sixth Amendment to file meritless motions."); see also United States v. Kimler, 167 F.3d 889, 893 (5th Cir. 1999) ("An attorney's failure to raise a meritless argument ... cannot form the basis of a successful ineffective assistance of counsel claim because the result of the proceeding would not

---

[24] State v. McKee, No. 2005 KA 2515, pp. 11-12; Supplemental State Rec., Vol. I of I.

[25] State v. McKee, 952 So.2d 695 (La. 2007) (No. 2006-KO-1920); Supplemental State Rec., Vol. I of I.

have been different had the attorney raised the issue."); <u>Sones v. Hargett</u>, 61 F.3d 410, 415 n.5 (5th

Cir. 1995) ("Counsel cannot be deficient for failing to press a frivolous point.").

In his supplemental memorandum, petitioner also argues that his counsel was

ineffective for failing to file a motion to quash the bill of information for misjoinder of offenses

and/or a motion to sever the various counts.  However, as noted below, it is evident that such

motions would likewise have been meritless.

Regarding joinder of offenses, Louisiana law provides:

Two or more offenses may be charged in the same indictment or
information in a separate count for each offense if the offenses
charged, whether felonies or misdemeanors, are of the same or
similar character or are based on the same act or transaction or on
two or more acts or transactions connected together or constituting
parts of a common scheme or plan; provided that the offenses joined
must be triable by the same mode of trial.

La.C.Cr.P. art. 493.  The law further provides:

Notwithstanding the provisions of Article 493, offenses in which
punishment is necessarily confinement at hard labor may be charged
in the same indictment or information with offenses in which the
punishment may be confinement at hard labor, provided that the
joined offenses are of the same or similar character or are based on
the same act or transaction or on two or more acts or transactions
connected together or constituting parts of a common scheme or plan.
Cases so joined shall be tried by a jury composed of twelve jurors,
ten of whom must concur to render a verdict.

La.C.Cr.P. art. 493.2.

To the extent that petitioner is claiming that the various offenses in the instant case

were not sufficiently related to be joined, he is obviously wrong.  The Louisiana Supreme Court has

noted that offenses which arise from the same "crime spree" are properly joined when they are

"closely related in point of time and basically ar[i]se out of one continuing transaction."  <u>State v. Webb</u>, 364 So.2d 984, 989 (La. 1978).  That is clearly the case here, where the various offenses were committed in continuous succession during a single escape attempt.

To the extent that petitioner is claiming that joinder was inappropriate because some of the offenses were triable by a six-person jury while others required a twelve-person jury, that claim also fails.  When related offenses are not triable by the same mode of trial, joinder is still permissible under article 493.2 as long as all charges are tried by a twelve-person jury.  <u>State v. Woods</u>, 4 So.3d 248, 252 (La. App. 5th Cir. 2009); <u>State v. Young</u>, 943 So.2d 1118, 1123 (La. App. 1st Cir. 2006).  Petitioner was tried by a twelve-person jury.[26]

That said, even where offenses are properly joined, the defendant may still move to have them severed.  Regarding such severance, Louisiana law provides:

> If it appears that a defendant or the state is prejudiced by a joinder of offenses in an indictment or bill of information or by such joinder for trial together, the court may order separate trials, grant a severance of offenses, or provide whatever other relief justice requires.

La. C.Cr.P. art. 495.1.  Nevertheless, the Louisiana Supreme Court has held that "the defendant has a heavy burden of proof when he alleges prejudicial joinder."  <u>State v. Washington</u>, 386 So.2d 1368, 1371 (La. 1980).  Moreover, severance is generally not warranted when, as here, "[a]ll offenses were connected in a continuous series of events."  <u>See, e.g.</u>, <u>State v. Mills</u>, 505 So.2d 933, 944 (La. App. 2nd Cir. 1987).  Further, the benefits of severance are greatly diminished in such circumstances because, as previously explained with respect to the Mississippi crimes, evidence of interrelated

---

[26] <u>See</u> State Rec., Vol. I of VIII, minute entry dated February 14, 2005.

crimes committed as part of a continuous criminal transaction are still admissible at trial.  Id.; see also State v. Carter, 412 So.2d 540, 543 (La. 1982); State v. Craddock, 435 So.2d 1110, 1116 (La. App. 1st Cir. 1983).  Therefore, even if the offenses had been severed in the instant case, evidence of *all* of the offenses would still have been admissible under La. Code Evid. art. 404(B)(1) and the *res gestae* doctrine.  In light of these factors and the circumstances of the instant case, it is clear that a motion to sever would have been denied.

Based on the foregoing, a motion to quash the bill of information for misjoinder of offenses and a motion to sever the various counts would have been meritless.  As noted previously, counsel is not ineffective for failing to file meritless motions.

Lastly, the Court notes that petitioner argues that even if his contentions regarding counsel's ineffectiveness do not warrant relief when considered individually, relief is warranted when they are considered cumulatively.  Petitioner is incorrect.  Where, as here, the individual contentions are meritless, that result cannot be changed simply by asserting them collectively. Pondexter v. Quarterman, 537 F.3d 511, 525 (5th Cir. 2008), cert. denied, 129 S.Ct. 1544 (2009); United States v. Hall, 455 F.3d 508, 520 (5th Cir. 2006); Miller v. Johnson, 200 F.3d 274, 286 n.6 (5th Cir. 2000); Sholes v. Cain, Civ. Action No. 06-1831, 2008 WL 2346151, at *17 (E.D. La. June 6, 2008), aff'd, No. 08-30654, 2010 WL 1141590 (5th Cir. Mar. 25, 2010); Simms v. Cain, Civ. Action No. 07-966, 2008 WL 624073, at *26 (E.D,. La. Mar. 8, 2008); Spicer v. Cain, Civ. Action No. 07-3770, 2007 WL 4532221, at *10 (E.D. La. Dec. 19, 2007); Franklin v. Thompson, Civ. Action No. 07-543, 2007 WL 3046642, at *13 (E.D. La. Oct. 17, 2007).  As the United States Fifth

Circuit Court of Appeals noted with respect to analogous claims of cumulative error: "Twenty times zero equals zero." Mullen v. Blackburn, 808 F.2d 1143, 1147 (5th Cir. 1987).[27]

In summary, it is evident that the state court identified the proper standard, i.e. the Strickland standard, and applied it in a reasonable manner. Therefore, petitioner has failed to demonstrate that the state court's decision was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. Accordingly, applying the AEDPA's deferential standard, this Court rejects the ineffective assistance of counsel claims.

<u>Speedy Trial</u>

Lastly, petitioner claims that he was denied his right to a speedy trial. The Louisiana First Circuit Court of Appeal denied that claim on direct appeal, holding:

> [D]efendant argues that the trial court denied his constitutional right to a speedy trial and denied him a hearing to prove the cause of the delay and the prejudice caused by that denial.
> A review of the record reveals that defendant filed two separate *pro se* motions to quash based on speedy trial violations of La. Code Crim. P. art. 578(2).[FN]
>
> > [FN] La. Code Crim P. art. 578(2) provides that the trial of non-capital felonies must be held within two years from the date of institution of prosecution. Institution of prosecution includes the filing of an indictment, or the filing of a bill of information, or

---

[27] Moreover, the Court notes that the United States Fifth Circuit Court of Appeals has held that "[i]f the facts adduced at trial point so overwhelmingly to the defendant's guilt that even the most competent attorney would be unlikely to have obtained an acquittal, then the defendant's ineffective assistance claim must fail." Green v. Lynaugh, 868 F.2d 176 , 177 (5th Cir. 1989). If that maxim is applicable to any case, it is surely applicable here where the evidence of petitioner's guilt was indeed overwhelming.

affidavit, which is designed to serve as the basis of a trial.  La. Code Crim. P. art. 934(7).

It is ordinarily incumbent upon the proponent of a motion to move for hearing date on that motion.  Otherwise, it may be considered that the motion has been abandoned.  **State v. Carter**, 96-0337, p. 7 (La. App. 1 Cir. 11/8/96), 684 So.2d 432, 437.  In our review of the record, the only inquiry defendant made regarding his motions to quash occurred after his trial and prior to sentencing.  Accordingly, we consider his motions abandoned.

Moreover, defendant urges this court to apply the four-factor test to determine speedy trial violations enunciated in **Barker v. Wingo**, 407 U.S. 514, 531, 92 S.Ct. 2182, 2192, 33 L.Ed.2d 101 (1972), to wit:  (1) the length of the delay, (2) the reason for the delay, (3) the defendant's assertion of his right to a speedy trial, and (4) the prejudice to the defendant.  We note that the bill of information was filed on March 4, 2002, and defendant's trial began on February 14, 2005, almost three years later.  Defendant's *pro se* motions to quash were filed on August 16, 2004, and October 28, 2004.  Assuming without deciding that this nearly three-year delay is presumptively prejudicial, we examine the other pertinent factors to determine whether a speedy trial violation has occurred.  Cf. **State v. Williams**, 94-0056, pp. 4-7 (La. App. 1 Cir. 3/3/95), 652 So.2d 586, 588-590.  We note that the reason for the delay is mostly attributable to defendant because his attorney took a long time to obtain medical records, and continuances were granted at defense counsel's request on February 10, 2004, March 29, 2004, June 14, 2004, September 13, 2004, and December 16, 2004.  Finally, defendant makes only vague allegations regarding his failing memory and the loss of contact with witnesses as a result of this delay.  These vague allegations and assertions, however, lack the required specificity to demonstrate he suffered any prejudice.

Accordingly, even under the test of **Barker v. Wingo**, we do not find defendant's constitutional right to a speedy trial has been violated.

This assignment of error is without merit.[28]

---

[28] State v. McKee, No. 2005 KA 2515, pp. 6-7; Supplemental State Rec., Vol. I of I.

The Louisiana Supreme Court then likewise denied petitioner's related writ application without assigning additional reasons.[29]

Even if this claim is not procedurally barred,[30] it has no merit.  The United States Fifth Circuit Court of Appeals has explained:

---

[29] State v. McKee, 952 So.2d 695 (La. 2007) (No. 2006-KO-1920); Supplemental State Rec., Vol. I of I.

[30] The United States Fifth Circuit Court of Appeals has held:

> A claim that a state has withheld a federal right from a person in its custody may not be reviewed by a federal court if the last state court to consider that claim expressly relied on a state ground for denial of relief that is both independent of the merits of the federal claim and an adequate basis for the court's decision.  To satisfy the "independent" and "adequate" requirements, the dismissal must "clearly and expressly" indicate that it rests on state grounds which bar relief, and the bar must be strictly or regularly followed by state courts, and applied to the majority of similar claims.

Finley v. Johnson, 243 F.3d 215, 218 (5th Cir. 2001) (citations omitted).  "A state court expressly and unambiguously bases its denial of relief on a state procedural default even if it alternatively reaches the merits of a [petitioner's] claim."  Fisher v. Texas, 169 F.3d 295, 300 (5th Cir. 1999). When the state court denied relief based on an independent and adequate state procedural rule, "federal *habeas* review is barred unless the petitioner demonstrates either cause and prejudice or that a failure to address the claim will result in a fundamental miscarriage of justice."  Hughes v. Johnson, 191 F.3d 607, 614 (5th Cir. 1999).
    The state court in the instant case clearly denied petitioner's claim on procedural grounds, finding that the claim was abandoned because he did not set his speedy trial motions for hearing.  However, it is unclear whether the state is raising the procedural bar, in that the state mentions the default only in passing in a mere two sentences, with no substantive discussion of whether the state rule is independent and adequate, whether there was cause and prejudice, or whether a fundamental miscarriage of justice would result from its application in this proceeding. Moreover, in any event, this Court need not determine whether a claim is procedurally barred if it is evident, as it is here, that the claim is clearly meritless.  Glover v. Hargett, 56 F.3d 682, 684 (5th Cir.1995); Wiley v. Puckett, 969 F.2d 86, 104 (5th Cir. 1992); Corzo v. Murphy, Civ. Action No. 07-7409, 2008 WL 3347394, at *1 n. 5 (E.D. La. July 30, 2008); Smith v. Travis, Civ. Action No. 08-4627, 2009 WL 1704335, at *9 & n.25 (E.D. La. June 16, 2009); Lee v. Cain, Civ. Action No. 06-9669, 2007 WL 2751210, at *9 (E.D. La. Sept. 18, 2007).

> The right to a speedy trial is guaranteed by the Sixth Amendment and applies to state criminal proceedings through the Fourteenth Amendment. A violation of the speedy trial right, if found, requires dismissal of the indictment. In Barker, the Supreme Court prescribed several factors to be considered when evaluating a speedy trial claim: (1) the length of the delay, (2) the reason for the delay, (3) the defendant's assertion of his right to speedy trial, and (4) prejudice to the defendant. None of these factors is either necessary or sufficient to find a speedy trial violation; rather, they are related factors and must be considered together with such other circumstances as may be relevant. The speedy trial inquiry therefore involves a difficult and sensitive balancing of these factors under the particular circumstances of a given case.

Goodrum v. Quarterman, 547 F.3d 249, 257 (5th Cir. 2008) (citations, footnotes, quotation marks, and brackets omitted), cert. denied, 129 S.Ct. 1612 (2009). For the following reasons, it is clear that only the first Barker factor weighs in petitioner's favor.

Regarding the first factor, the length of the delay, the state court found that factor weighed in favor of petitioner. This Court agrees. The state court assumed for the purposes of its decision that the delay in the instant case was presumptively prejudicial. This Court will likewise employ the same assumption. See Goodrum, 547 F.3d at 257-58 (noting that delays of approximately a year or more are sufficient to give rise to a presumption of prejudice).

Regarding the second factor, the reason for the delay, the state court found that factor weighed in favor of the state. The state court found that the reasons for the delay were mostly attributable to the defense, a finding that petitioner has failed to persuasively rebut. "[D]elays explained by valid reasons or attributable to the conduct of the defendant weigh in favor of the state." Goodrum, 547 F.3d at 258.

The third factor, petitioner's assertion of his right to speedy trial, likewise weighs in the state's favor.  Although he filed two *pro se* motions asserting the right, he did not timely set either motion for hearing as required by the state's procedures.  Therefore, as a matter of state law, the motions were deemed abandoned.  See State v. Wagster, 361 So.2d 849, 856 (La. 1978) ("[I]t is ordinarily incumbent upon the proponent of a motion to move for a hearing date on that motion. Otherwise it may be considered that the motion has been abandoned."); State v. Carter, 684 So.2d 432, 437 (La. App 1st Cir. 1996).  Accordingly, he never properly asserted and pursued his right to a speedy trial.

Regarding the fourth and final factor, prejudice to petitioner, the state court correctly found that petitioner had not established that he suffered such prejudice.  Again, petitioner has not persuasively rebutted that finding.  As noted by the state court, petitioner offers nothing more than vague and conclusory allegations which are clearly insufficient to constitute proof of the prejudice required to support such a claim.  See Goodrum, 547 F.3d at 262.[31]

Because the state court properly identified the Barker test as the framework for analyzing petitioner's speedy trial claim, this Court focuses on only the objective reasonableness of the result of the state court's balancing of the Barker factors under the facts in the instant case. Goodrum, 547 F.3d at 257.  For the foregoing reasons, it is evident that the state court's rejection

---

[31] The Court notes that the anxiety and concern an accused person may experience while awaiting trial is recognized as a form of prejudice which must be considered.  See Goodrum, 547 F.3d at 262-63.  However, petitioner has not alleged, much less brought forth evidence to show, that he suffered anxiety and concern sufficient to warrant a finding a prejudice.

of the speedy trial claim was objectively reasonable.   Accordingly, the decision is entitled to deference, and petitioner's claim should be rejected.

## RECOMMENDATION

Accordingly, **IT IS RECOMMENDED** that the petition of **Robert Lee McKee** for federal *habeas corpus* relief be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  28 U.S.C. § 636(b)(1); Douglass v. United Services Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).[32]

New Orleans, Louisiana, this thirtieth day of September, 2010.


**DANIEL E. KNOWLES, III**
**UNITED STATES MAGISTRATE JUDGE**

---

[32] Douglass referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to fourteen days.